# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____
                                                            :
**FIDELITY BROKERAGE SERVICES LLC,**         :
                                                            :
                    **Plaintiff,**              :
                                                            :
     **v.**                                               :       **CASE NO.**
                                                            :
**ADAM RITTER,**                                    :
                                                            :
                  **Defendant.**             :
_____

## DECLARATION OF RICHARD WULFORST

I, Richard Wulforst, declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1.     I am over the age of 18. All statements in this Declaration are based on my personal knowledge, or, where indicated, based on my investigation. I submit this Declaration on behalf of Plaintiff Fidelity Brokerage Services LLC ("Fidelity") in support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Expedited Discovery.

2.     I am currently the Vice President, Branch Leader for Fidelity's Highland Park and Evanston, Illinois Branch offices.

3.     I have been employed by Fidelity for approximately five and a half years. I began my employment with Fidelity in October of 2019 and have been the Branch Leader for the Highland Park, Illinois Branch office since that time.

4.     Prior to his resignation from Fidelity, Defendant Adam Ritter ("Ritter") worked as a Vice President, Financial Consultant ("VPFC") in Fidelity's Highland Park, Illinois Branch Office. In my capacity as Branch Manager, I supervise Financial Consultants in the Branch.

5.     As a VPFC at Fidelity, Ritter was assigned to service and manage Fidelity's relationship with a select group of Fidelity's customers who were assigned to him, or were referred

to him by existing customers. As a VPFC, Ritter would also have been servicing high net worth customers in that role. By the time of his resignation, Ritter had daily access to and had gained knowledge of confidential Fidelity information relating to approximately 600 households, representing over $1.4B in customer assets under Fidelity administration.

6.     Fidelity vigilantly preserves its trade secret customer data so that it does not become available to competitors who could use the data to divert customers, without the investment of time, labor, and capital that Fidelity made to compile the information. Fidelity does not provide its trade secret customer data to competitors.

7.     Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access. Fidelity further protects this confidential information by using various safeguards for its computer system on which the information is stored and through which it is constantly updated. Employees such as Ritter require passwords to access the Fidelity computer system.

8.     Fidelity also maintains and advises its employees of a Corporate Information Protection Policy that is displayed on Fidelity's intranet. A true and correct copy of Fidelity's Corporate Information Protection Policy is attached hereto as Exhibit A. Fidelity periodically reminds its employees of this policy and provides employees with an Information Protection Policy Quick Reference Card ("QRC") explaining how to protect specific types of Fidelity confidential information. A true and correct copy of Fidelity's QRC is attached hereto as Exhibit B.

9.     Fidelity additionally preserves trade secret customer data by requiring VPFCs to execute a standard Fidelity Employee Agreement, in which they agree not to use or disclose confidential information of the Fidelity Companies, including customer information, outside of Fidelity and not to solicit customers of the Fidelity Companies. Fidelity records indicate that Ritter executed the Employment Agreement in connection with his initial employment on May 6, 2016. A

copy of his May 6, 2016 Agreement is attached hereto as Exhibit C. Fidelity records indicate that Defendant Ritter renewed his promises by electronically executing Fidelity's Employee Agreement again on May 5, 2020. A true and correct copy of his May 5, 2020 Agreement is attached hereto as Exhibit D.

10.     In his Employee Agreements, Ritter acknowledged the confidentiality of Fidelity's records, including Fidelity's customer lists and customer information, promised that he would not use or disclose that information for any reason other than performing his duties on behalf of Fidelity, and promised that he would "upon termination … return all company property … including but not limited to Confidential Information." Exhibits C-D, paragraphs 1, 3.

11.     As consideration for these agreements and compliance with its policies, Fidelity hired, employed and promoted Ritter, compensated him throughout his employment, provided him with introductory and continuing on-the-job training and education, and allowed him to access confidential customer information. As a VPFC, Fidelity assigned Ritter customers with higher assets to service on behalf of Fidelity and provided Ritter with leads to enable him to succeed at Fidelity. Fidelity further provided Ritter with support services; paid for facilities, computer equipment, market reporting services, and all other business expenses; and registered Ritter with the Financial Industry Regulatory Authority and the New York Stock Exchange.

12.     Following his resignation, Ritter was sent a letter from Fidelity, reminding him of his post-separation obligations to Fidelity under his employment agreement, including his one-year obligation not to solicit Fidelity customers. A copy of this letter is attached hereto as Exhibit E.

13.     Despite this reminder, after Ritter joined NewEdge, Fidelity began receiving reports that Ritter was soliciting Fidelity customers to transfer their business to his new firm. Further, multiple customers reported that Ritter had texted them, confirming that Ritter had retained the customers' cell phone information.

14.     In light of this conduct, Fidelity's in-house counsel sent a letter to Ritter again reminding him of his contractual obligations, enclosing a copy of his Employee Agreement, and demanding that he cease any further solicitation of Fidelity customers.  Fidelity also enclosed an affidavit for Ritter to sign attesting that he did not have, or had returned, any of its customer information.  A copy of Fidelity's April 18, 2025 letter to Ritter is attached hereto as Exhibit F.

15.     By email dated April 25, 2025, Ritter's counsel responded to Fidelity's letter. Although Ritter's counsel did not return a signed affidavit, he stated that Ritter had not violated his legal obligations to Fidelity. Ritter's counsel also requested a copy of Fidelity's social media policy and indicated that he was available for a call to address any remaining concerns.  A copy of Ritter's counsel's email to Fidelity's counsel dated April 25, 2025 is attached hereto as Exhibit G.

16.     On April 28, 2025, Fidelity's counsel responded to Ritter's counsel providing the social media policy and her availability for a call to discuss the outstanding concerns.  A copy of counsel's April 28, 2025 email to Ritter's counsel is attached heretoas Exhibit H. Fidelity's counsel did not receive a response to her April 28th email.

17.     Following these exchanges, Fidelity received additional reports from customers that Ritter was soliciting their business. One customer reported that Ritter reached out to him to let him know that he was with a new firm and talked to him about the ability to move assets over and some of the benefits that he could now provide.

18.     Another customer reported to Fidelity that Ritter reached out to her to let him know where he was and what he was doing and provided them with information about moving to his new company.

19.     Likewise, another customer reported that Ritter had contacted her on LinkedIn and invited her to do business with him at his new firm.  As a result of his solicitation, she decided to transfer her managed IRA to Ritter.

20.     Accordingly, in May of 2025, outside counsel for Fidelity contacted Ritter's counsel in an attempt to stop Ritter's continuing illegal conduct without resorting to litigation.

21.     Ritter's counsel responded to Fidelity's outside counsel by providing an affidavit from Ritter, which was substantially different from the original affidavit requested.  A copy of the May 2, 2025, affidavit is attached hereto as Exhibit I.

22.     Because the May 2, 2025 affidavit provided by Ritter's counsel did not address Ritter's continuing solicitation, Fidelity's outside counsel sent a revised affidavit to Ritter's counsel on May 28, 2025.  A copy of counsel's May 28, 2025 email and attached affidavit is attached hereto as Exhibit J.

23.     On June 8, 2025, counsel for Ritter sent a supplemental affidavit signed by Ritter, again not providing the assurances requested by Fidelity, however, representing that Ritter would not initiate contact with customers except to send personal greetings, such as to comment on a sporting event or wish them a Happy Thanksgiving.  A copy of the June 6, 2025 affidavit signed by Ritter is attached hereto as Exhibit K.

24.     Despite Fidelity's repeated attempts to resolve this matter without resorting to litigation, Fidelity continues to receive reports from its customers that Ritter has been, and continues to, solicit them.

25.     Specifically, in a meeting with a Fidelity representative on June 9, 2025, a Fidelity customer complained to Fidelity that Ritter had been calling him almost every other business day for a few weeks to solicit him to bring his business to his new firm. He expressed to the Fidelity representative that he wanted the calls to stop.

26.     On July 7, 2024, another customer also reported that Ritter had reached out to him the prior week.

27.     And as recently as July 15, 2024, yet another customer reported that Ritter had reached

out to him on two separate occasions.

28. The theft and misuse of the confidential and trade secret customer information of the Fidelity Companies to solicit and unfairly compete with Fidelity causes both monetary and irreparable harm. Ritter's conduct has and will continue to irreparably harm Fidelity's relationships with its customers, such as by losing goodwill, losing future business or referrals, as well as losing trust and confidence in securing inherently private information, which cannot be calculated with precision and cannot be adequately compensated.

29. Fidelity customers rightfully have an expectation that their confidential contact and financial information, such as their identities, contact information, net worth, risk tolerances, investment goals, and preferences, will be protected and not misused by departing employees. Thus, customers understandably are concerned when former Fidelity employees, such as Ritter, have access to their information and are using it to solicit their business at a new and different securities firm.

30. The damage to Fidelity's customer relationships is therefore incalculable as Fidelity cannot put a price on the value of its customer relationships or the damage caused when Ritter improperly misused confidential customer information on behalf of a competitor.

31. Nor can Fidelity calculate the financial loss it may suffer from the loss of any given account resulting from Ritter's wrongful conduct, because there is no way to know for how long Fidelity might have otherwise retained that customer, nor how much business that customer might have done with Fidelity or referred to Fidelity in the future had they not been wrongfully solicited by Ritter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

_____
Richard Wulforst

Executed on August 4th, 2025

# Exhibit A

**Enterprise Cybersecurity (ECS)**

# Corporate Information Protection Policy

Published Date: 10/22/2021
Version: 9.13
Product Area: Data Security, Detection & Response
Last Review Date: 9/13/2021
Next Review Date: 9/13/2022

## Contents

1. Summary ........................................................................................................... 1
    1.1 Purpose ..................................................................................................... 1
    1.2 Scope ......................................................................................................... 1
2. Classifying Fidelity Information ...................................................................... 1
    2.1 Fidelity Public Information (Public) ......................................................... 1
    2.2 Fidelity Internal Information (Internal) ................................................... 1
    2.3 Fidelity Confidential Information (FC) ..................................................... 2
    2.4 Fidelity Highly Confidential Information (FHC) ...................................... 2
    2.5 Changing Classification Levels ................................................................. 2
    2.6 Reviewing Assigned Classifications ........................................................ 2
3. Labeling Fidelity Information .......................................................................... 2
    3.1 Forms and Documents .............................................................................. 2
    3.2 Websites ..................................................................................................... 2
    3.3 Special Circumstances .............................................................................. 3
        3.3.1 Legally Privileged Communications ................................................ 3
        3.3.2 Information with Mixed Classifications ........................................... 3
        3.3.3 Unlabeled Information ....................................................................... 3
        3.3.4 No Label Required .............................................................................. 3
        3.3.5 Out of Scope Information .................................................................. 3
4. Handling Fidelity Information ......................................................................... 3
    4.1 Avoid Accidental Information Disclosure ............................................... 3
    4.2 Protect Information on Electronic Media and Portable Devices ........... 4
    4.3 Store Information Securely ........................................................................ 5
        4.3.1 Confidential and Highly Confidential Information Only ................ 5
        4.3.2 Additional Precautions When Working Outside the Office ........... 5
    4.4 Encrypt Fidelity Information ..................................................................... 5
        4.4.1 Encryption Guidelines for Confidential and Highly Confidential Information ...... 5
        4.4.2 Encryption Guidelines for Cloud (IaaS/PaaS/CaaS) Information .... 5
    4.5 Report Known or Suspected Information Loss or Disclosure ............... 6
    4.6 Protect Personal Information ................................................................... 6
    4.7 Secure Physical Devices Outside the Office ........................................... 6
        4.7.1 Hotel Rooms ...................................................................................... 6
        4.7.2 While Traveling .................................................................................. 6
        4.7.3 Personal Workspaces ........................................................................ 6
5. Disposing of Fidelity Information ................................................................... 6
6. Vendor Use of Personal Information .............................................................. 7
7. Information Protection Roles and Responsibilities ...................................... 7
    7.1 Managers .................................................................................................... 7
    7.2 Information Security Officers (ISOs) ........................................................ 7
    7.3 Information Owners ................................................................................... 7
8. Associated Content & References ................................................................... 7
9. Contacts ............................................................................................................. 7

# 1. Summary

## 1.1 Purpose

You are responsible for classifying and labeling the Fidelity information you use or encounter. Proper information classification, labeling, and handling are integral to Fidelity's business. By following this policy, you help protect Fidelity from legal and financial liability as well as regulatory and reputational risk.

Assigning the right classification is essential. A too-low classification puts sensitive information at risk. A too-high classification, while generally less damaging, can still be harmful since it restricts access and forces you and others to take excessive security precautions. If you think something is classified incorrectly, notify the person or office from whom you received the information.

Applying this policy requires both knowledge and judgment on your part. In some cases, it may be appropriate to assign a higher classification than a document would otherwise receive.

Fidelity Enterprise Cybersecurity (ECS) policy is intended to protect the firm in an evolving threat landscape, regardless of changes in technology or business practices. Even if specific terminology or scenarios are not part of the text, it is expected that you will exercise sound reasoning and judgment to adhere to the intent of stated requirements, practices, and implementations in both letter and spirit.

Your business unit (BU) may have additional requirements concerning information security. Understanding and following them is your responsibility. Ask your manager or your BU's Information Security Officer (ISO). Some non-U.S. companies may have their own versions of this policy; be aware of potential policy differences when working with companies in other countries.

## 1.2 Scope

This policy applies to the Fidelity workforce as defined in the Employee Classifications Definition (U.S.) document.

# 2. Classifying Fidelity Information

You are responsible for making sure that Fidelity Information is accurately labeled with the correct classification. Even if a document is already labeled, make sure the classification is correct. Fidelity information must be assigned one of the four classifications described below. Classification levels are based on risks to business operations and business reputation and the potential for financial loss to Fidelity, associates, and customers. For examples of each classification, see the Information Protection Policy Quick Reference.

## 2.1 Fidelity Public Information (Public)

Public information is intended for general circulation inside and outside Fidelity. Public circulation of the information would not expose Fidelity to any reputational risk, financial loss, or competitive disadvantage.

Items classified as Public do not require a label (although they can be labeled if desired) and they do not require any special handling. You must get approval before classifying any information as Public.

- For marketing materials and items distributed to customers, use the process approved for your BU (e.g., eReview)
- For presentations, publications, and speeches, consult the External Communications Policy
- For other items, contact Fidelity Legal

## 2.2 Fidelity Internal Information (Internal)

Fidelity internal information is intended for relatively unrestricted circulation inside Fidelity during the normal course of business, including, as appropriate, consultants, vendors, or temporary

workers.

Unauthorized access, disclosure, use, or tampering could have a minor adverse effect on the confidentiality or integrity of the information, or could otherwise cause minor impact to Fidelity, Fidelity associates or customers.

Within the Internal Information category, computer source code may require more protective measures than other types of information. See Protection of Source Code in the Secure Software Development Lifecycle Standard.

## 2.3 Fidelity Confidential Information (FC)

Fidelity confidential information is intended for individuals and groups with a business need to know. Unauthorized access, disclosure, use, or tampering could have a moderate adverse effect on information confidentiality or integrity, or could otherwise moderately impact Fidelity, our associates, or our customers.

## 2.4 Fidelity Highly Confidential Information (FHC)

Fidelity highly confidential information is data that, if compromised, may have a severe impact on Fidelity, its customers, vendors, or employees. Unauthorized access, disclosure, use, or tampering could have a severe adverse effect on information confidentiality or integrity or could otherwise severely impact Fidelity, our associates, or our customers.

Within the Highly Confidential category, some types of information require more protective measures than others.

## 2.5 Changing Classification Levels

Sometimes information needs to be reclassified. For example, a product announcement might be Highly Confidential while in development, but Public once it is released. Make sure the information owner approves any reduction in classification level. Anything classified as Public requires necessary approvals described in this policy.

## 2.6 Reviewing Assigned Classifications

Information owners should periodically review the risk classifications of resources for which they are responsible, to ensure that the assigned classification levels are still appropriate.

# 3. Labeling Fidelity Information

Label Fidelity information under your control. Use the full label text for the classification:

- Fidelity Internal Information
- Fidelity Confidential Information
- Fidelity Highly Confidential Information

If you are in doubt as to the correct label text, contact your ISO. Except as noted, Fidelity information must be clearly labeled with its classification, as follows:

## 3.1 Forms and Documents

These requirements apply to both hardcopy and electronic formats:

- Frequency: every page or slide, including cover/title page
- Preferred location: header or footer
- Forms are labeled according to the contents included in the completed form.

## 3.2 Websites

- Frequency: every page, including home page
- Preferred location: header or footer

### 3.3 Special Circumstances

### 3.3.1 Legally Privileged Communications

Any print and electronic materials with information that may be protected by attorney-client privilege must be labeled "Attorney-Client Communication" in addition to the classification label.

### 3.3.2 Information with Mixed Classifications

When information of different classifications is combined, the resulting materials must be classified and handled according to the most restrictive classification.

### 3.3.3 Unlabeled Information

If you encounter Fidelity information that appears to require a classification label but does not have one, add the correct label or contact the information owner and request them to do so.[1]

### 3.3.4 No Label Required

No label is required on the following:

- Materials approved for classification as Public
- Materials intended for end customer use (such as account statements)
- Participant reports and other client data requested by clients or intended for their use; however, alternative labeling may be required if a client has requested it
- Materials received from end customers
- Vendor or other third-party information already labeled by the vendor or other source
- Information stored or handled by legacy applications and systems that lack the capacity for labeling
- Non-business information

### 3.3.5 Out of Scope Information

Information that does not concern Fidelity business in any way (e.g., an email to a family member about childcare arrangements) is considered non-Fidelity information and falls outside the scope of this policy.

## 4. Handling Fidelity Information

Proper handling depends on the information's classification and labeling. The following rules outline both general and specific methods for using, storing, transmitting, and reproducing information. Rules in this section that apply only to Confidential and Highly Confidential Information are identified as such.

### 4.1 Avoid Accidental Information Disclosure

With every Fidelity information classification other than Public, follow these precautions:

- Keep discussions behind closed doors when possible. Use caution when discussing information in public places such as restaurants or elevators.
- Be aware of who or what is within earshot. Unauthorized listeners or devices (e.g., Amazon Echo, Google Home, and cell phones) may be present at any given time, even in an office environment.
- Erase whiteboards when leaving conference rooms or open spaces.
- Limit distribution to those who need to know. Keep access and distribution to the smallest set of recipients possible without eliminating necessary or appropriate recipients. Review addressees (both on email and physical mail) prior to distributing information. The more sensitive the information, the more restricted the distribution list should be.

---

[1] Any Fidelity company that is not known to a customer as "Fidelity" (e.g., Devonshire Investors – Diversified Investments) may substitute its company name in place of Fidelity in the label.

- Outside Fidelity, share information with qualified parties only. Do not share information with vendors or other external parties unless you are sure that they already have an established relationship with Fidelity and are subject to a non-disclosure agreement (NDA) or are otherwise restricted from disclosing the information to others. An NDA is required[2] if sharing data for contract negotiation purposes, proof of concept demonstrations based on a request for proposal (RFP), source code sharing for pilot projects, and pre-contract due diligence reviews. If a vendor will have access to personal information, make sure that a Fidelity Vendor Technology Risk (VTR) assessment has been performed and that the vendor has a contract (not just an NDA) in place with appropriate confidentiality and data security obligations. See the Vendor Privacy Oversight Policy.
- Never share passwords and never store passwords (on paper or electronically) where someone could find and use them.
- Be careful when printing or copying. Use one of the following:
  - Internal printer
  - Approved print service (internal or external)
  - Personally, supervise printing on other printers (such as at home or while traveling)

Do not let sensitive information lie unattended in fax machines, printers, or copier trays and don't forget to take your originals with you. Securely dispose of any unwanted copies.

Do not print Highly Confidential information unless you have a business need and are authorized to do so.

Note: Incidental and occasional use of Fidelity resources to print your own personal information, such as tax statements or performance reviews, is acceptable.

Do not leave Fidelity Information, including Confidential or Highly Confidential Information, unsecured in your workspace. This includes your assigned desk, unassigned desk, common/shared areas, and conference rooms.

Do not photograph or make video recordings of Confidential or Highly Confidential information displayed on computer screens.

## 4.2 Protect Information on Electronic Media and Portable Devices

Employees who use electronic media (such as CDs and USB devices) or portable electronic devices (such as laptops and PDAs) are responsible for the security of the Confidential and Highly Confidential Information contained on them. Because it can be difficult to know whether electronic media or devices contain such Information, always treat electronic media and devices as if they contain Highly Confidential Information. Make these steps part of your routine:

- Keep electronic media on your person or in sight while traveling or any other time they cannot be physically secured.
- Secure electronic media in a locked drawer or locked office when they are not in your immediate possession.

---

[2] The requirement regarding being bound by an NDA, contract, or other obligation of confidentiality may not apply in certain cases:

(a) if Fidelity is legally obligated to provide non-public Fidelity information to an external party –in these situations, consult with Legal

(b) for Corporate Policies and similar non-public Fidelity information, if reasonable assurance exists that the recipient will restrict distribution to those with a business–related or legal "need to know" (e.g., applicable corporate policies may be provided in response to a request from a former employee, or requests from or proposals to business partners, clients, or prospects). Contact HR Solutions/Employee Relations at (800) 835-5099, Option 2 for questions on external party access to Corporate Policies. Contact Procurement for NDAs and questions on external party access for business purposes at http://spendsmart.fmr.com

- Secure laptops outside Fidelity facilities.

Related requirements for Fidelity mobile devices are detailed in the Electronic Communications, Social Media, and Systems Usage Policy.

## 4.3 Store Information Securely

### 4.3.1 Confidential and Highly Confidential Information Only

For Confidential and Highly Confidential Information, store hard copies in a locked office, filing cabinet, or other facility accessible only to authorized individuals. Information on websites, file servers, or approved document repository services (e.g., SharePoint) must be protected by access controls.

Highly Confidential Information must remain within Fidelity premises unless there is a specific business reason for it to circulate or be transported outside Fidelity.

### 4.3.2 Additional Precautions When Working Outside the Office

When working at home or at another remote location, safeguard Fidelity media as carefully as you would in the office or when traveling. Make sure no one else in your location can access Fidelity information. Use security controls outlined in the Flexible Work Options Policy for guidance. Save non-public Fidelity information only to approved media, devices and systems in accordance with the Electronic Communications, Social Media, and Systems Usage Policy.

Local Administrator rights on Fidelity devices and systems are restricted to reduce the likelihood of introducing viruses or malware into the Fidelity network. Downloading software and adding printers or other peripheral devices outside the office must be coordinated with Techworks or a local IT contact.

## 4.4 Encrypt Fidelity Information

Refer to the encryption information on the Email Security page or consult with your BU's ISO for current supported email and file encryption tools. For system-to-system communications, data storage, and password administration, system administrators should consult applicable ECS policy on the ECS Policy Website.

### 4.4.1 Encryption Guidelines for Confidential and Highly Confidential Information

Where BUs have determined a technology solution to be effective and acceptable to external entities with which Fidelity information is shared, use encryption for:

- PINs and passwords that are being transmitted or stored
- Confidential or Highly Confidential Information stored on removable media
- Any transmission, including email, of Confidential or Highly Confidential Information outside the Fidelity network
- Fidelity employee compensation and performance data that is being emailed, whether within Fidelity or externally

You must use only Fidelity-approved encryption methods. To select an appropriate encryption method, see the Encryption Standard.

### 4.4.2 Encryption Guidelines for Cloud (IaaS/PaaS/CaaS) Information

Where BUs have determined an IaaS/PaaS/CaaS solution to be effective and acceptable for external entities with which Fidelity information is shared, comply with the following encryption requirements:

- Data-in-transit – Encrypt at all times in the IaaS/PaaS/CaaS using Fidelity-managed or approved third-party-issued certificates (e.g., Akamai or Entrust)
- Data-at-rest – Encrypt at all times in the IaaS/PaaS/CaaS using Fidelity-managed keys
- BU's must work within defined encryption guardrails for certified services depending on the data classification. Data protection requirements for each service can be found in the configuration guide for that service.

Where IaaS/PaaS/CaaS encryption services provided are not adequate, BU's must use client-side encryption.

## 4.5 Report Known or Suspected Information Loss or Disclosure

Notify your ISO or Corporate Security of any known or suspected information loss or disclosure. This includes cases of access by unauthorized parties as well as circumstances that might have allowed such access (e.g., sending an unencrypted email containing Confidential or Highly Confidential Information). Report incidents immediately.

## 4.6 Protect Personal Information

The Fidelity workforce has a duty to protect personal information. For this policy, personal information is considered Highly Confidential. This includes lists containing customer information. Exceptions to some handling requirements for personal information may be warranted by context or circumstance. Consult with the information owner, your manager, and ISO for guidance regarding appropriate handling, disposal, and other controls. Use sound judgment and assess risk when working with personal information.

Some employee personal information, such as business contact information and employee photos, is considered Internal. To find out which employee personal information is considered Internal Information, see the Employee Personal Information Privacy Notice & Policy.

Additional legal requirements may apply to personal information transmitted to or from other countries or global regions (such as the European Union). Check with Compliance or Fidelity Legal.

For logging and masking personal information before use in a test environment, see the Database Standard and Secure Software Development Lifecycle Standard.

## 4.7 Secure Physical Devices Outside the Office

### 4.7.1 Hotel Rooms

When travel includes a hotel stay, Fidelity associates must take reasonable precautions to prevent theft or loss, such as cable-locking devices or storing them in room safes.

### 4.7.2 While Traveling

Fidelity associates must take reasonable precautions to prevent theft or loss of devices and data while traveling:

- Keep laptops or devices securely in hand or within sight when they cannot be physically secured.
- Do not check mobile devices as luggage unless directed to do so by the airline and/or as a result of a government directive. If not required to check an item, it should remain in your possession as hand luggage.
- If you are not allowed to keep the device in your possession, power it off before checking it through to your destination.
- If you must leave a laptop or device in a vehicle, shield the device from view (e.g., stow it in the trunk) and lock the vehicle.

### 4.7.3 Personal Workspaces

Access to Fidelity-owned devices at your home office or other personal workspace must be limited to yourself. Family members, friends, and other non-Fidelity personnel are not allowed to use your Fidelity devices.

# 5. Disposing of Fidelity Information

Fidelity information must be disposed of at the right time and in the right way with the following in mind:

- Applicable record retention requirements

- Whether the information is subject to a legal hold (documents subject to a legal hold must not be altered or destroyed)
- Classification
- Type of media or device involved
- BU-specific processes

For more about disposal practices at Fidelity, see the Information and Device Disposal Standard.

## 6. Vendor Use of Personal Information

To determine whether Personal Information can be shared with a vendor, please review the Vendor Privacy Oversight Policy.

## 7. Information Protection Roles and Responsibilities

### 7.1 Managers

Managers communicate, support, and help enforce the policy. Managers are responsible for understanding this policy and helping communicate and enforce its terms. Managers should contact HR Solutions (or their local equivalent) to determine how best to address violations.

Managers take responsibility for proper information handling by departing employees. When an employee terminates, transfers, or relocates, their manager ensures that the employee disposes of documents and materials in accordance with this policy. Any tasks left undone by the departing employee are the manager's responsibility to rectify.

### 7.2 Information Security Officers (ISOs)

ISOs interpret and administer the policy at the BU level. They are responsible for translating policy into specific controls that are appropriate and effective for their respective BU's.

ISOs are responsible for helping their assigned BU implement enterprise security programs related to this policy. They are also expected to guide and assist individual employees with policy understanding and compliance.

### 7.3 Information Owners

Information owners periodically review data classifications. Information and application owners periodically review risk classifications of resources for which they are responsible to ensure appropriateness of the assigned classification level.

Information owners may delegate their responsibilities; however, accountability remains with the information owner. Information owner responsibilities include:

- Mandating information security policy and control implementation
- Authorizing and periodically reviewing access entitlements
- Ensuring resolution of information security-related audit issues
- Delegating authority as required within their business area to complete tasks
- Periodically reviewing information classifications of resources under their control
- Maintaining an inventory of information resources (e.g., data, hardware, software) under their control

## 8. Associated Content & References

Training Questions – Visit the Enterprise Cybersecurity Training (fmrcloud.com) website

## 9. Contacts

Please contact your ISO with any questions related to this policy.

# Exhibit B

# Information Protection Policy Quick Reference

## Classify and Label

| CLASSIFICATION | | | |
|---|---|---|---|
| **Fidelity Public**<br>Public information is intended for general circulation.[1] Explicit approval is needed before assigning this classification. | **Fidelity Internal**<br>Information intended for relatively unrestricted circulation within the Fidelity Workforce. | **Fidelity Confidential**<br>Information *not* intended for unrestricted circulation within the Fidelity Workforce. | **Fidelity Highly Confidential (HC)**<br>High-risk information that requires strict controls. |
| Label Optional | Label Required | Label Required | Label Required |
| Examples include:<br>• Articles in the press<br>• Brochures, published marketing materials<br>• Code contributed to Open Source<br>• Press releases<br>• Public websites<br>• Published annual reports<br>• Published fund prospectuses<br>• Regulatory and legal filings<br>• Released patents<br>• Stock quotes | Examples include:<br>• Basic emergency response plans<br>• Employee contact information (e.g., name or email)<br>• Employee web/intranet portals<br>• *Fidelity Central* and internal newsletters<br>• Fidelity policies and procedures<br>• Fidelity training materials<br>• Organization charts | Examples include:<br>• Account numbers<br>• Audit reports<br>• Budget information and non-public financial statements<br>• Business strategies and plans<br>• Customer employee ID<br>• External IP addresses<br>• Grant information<br>• Most Fidelity source code<br>• Non-public legal work/litigation info<br>• Non-security technical specifications/architectures<br>• Plan/client data<br>• Pre-release marketing materials<br>• Purchasing/bid information<br>• Security findings or reports (e.g., SOC-1)<br>• Systematically generated IDs when used alone (e.g., Universal (UID), Member (MID) and Workplace (WID) IDs)<br>• Unreleased fund holdings/trades | Examples include:<br>• Board meeting materials & reports<br>• Compensation data<br>• Credit card numbers<br>• Customer Personal Information that can identify an individual (e.g., name used in conjunction with external IP address, email, phone or account no., UIDs, MIDs, or WIDs)<br>• Highly sensitive legal work<br>• Passwords and PINs<br>• Performance reviews<br>• Private encryption keys<br>• Proposed acquisitions, ventures, and divestitures<br>• Protected Health Information (PHI)<br>• Health Sensitive Data (HSD)<br>• Reports of significant exposures, risk assessments, and pen test results<br>• Security system architectures and procedures<br>• Social security numbers<br>• System credentials<br>• Trade secrets |

[1]Note that Public Information may have a different classification prior to its release.

**Know the policy -** Read the Information Protection Policy

**Seek guidance -** If you have questions or concerns about information protection or if you know of items that are out of compliance, please contact your manager or your business unit's ISO

**Use sound judgment -** The lists above are examples, not definitive classifications. Items containing customer data, security information, prelaunch new product details, or similar sensitive information should be classified as Fidelity Highly Confidential

Information Protection Policy Quick Reference

## Handle and Dispose

| | Classification | | | Fidelity Highly Confidential | | | |
|---|---|---|---|---|---|---|---|
| | Public | Fidelity Internal | Fidelity Confidential | All Other HC | Personal Information[1] | Employee Comp. & Performance | PINs/ Passwords |
| **Handle** | | | | | | | |
| Get approval before assigning this classification | R | N/A | N/A | N/A | N/A | N/A | N/A |
| Do not share outside Fidelity (e.g., with vendors or contractors) except on a need-to-know basis and when the recipient is restricted from disclosing the information to others | N/A | R | R | R | R | R | R |
| Use caution when discussing in public | N/A | R | R | R | R | R | R |
| Report possible or actual loss immediately to the ISO or Corporate Security | N/A | R | R | R | R | R | R |
| Encrypt when sending or transporting outside Fidelity | N/A | ✓ | R | R | R | R | R |
| Encrypt when emailing inside Fidelity | N/A | ✓ | BP | BP | BP | R | R |
| Share only on a need-to-know basis inside Fidelity | N/A | BP | R | R | R | R | ✗ |
| Do not leave unsecured copies on copiers/printers or in any workspace, including offices, assigned/unassigned desks, common/shared areas, and conference rooms | N/A | BP | R | R | R | R | R |
| Limit access on internal websites and systems (PINs and passwords are never available) | N/A | BP | R | R | R | R | N/A |
| Obtain specific permission and have a specific business requirement before removing info with this classification from Fidelity premises | N/A | BP | BP | R | R | R | N/A |
| Never share with anyone, and never carry with the related device | N/A | N/A | N/A | N/A | N/A | N/A | R |
| **Dispose** | | | | | | | |
| Place in deskside/shared recycling (paper only) | ✓ | ✓ | ✓ | ✗ | ✗ | ✗ | ✗ |
| Personally shred (paper only) or place in locked Fidelity recycling container (paper) or turn in to local Security Office (removable media) | ✓ | ✓ | ✓ | R | R | R | R |

[1]See the Information Protection Policy for a complete description of Personal Information.



| Key | |
|---|---|
| Required | R |
| Best Practice | BP |
| Permitted | ✓ |
| Prohibited | ✗ |
| Not Applicable | N/A |

# Exhibit C

Mandatory fields are marked with a red indicator.

**Employee Agreement**

# Employee Agreement

Adam Ritter ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provie to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2. Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requirees access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. Outside Business Activities. So long as Employee is employed by the Fidelity Companies. Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. Inventions and Use of Name or Likenss. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. Agreements with Others. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. At Will Employment. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. Communication with Governmental Entities. Nothing in this Agreement shall prohibit or restrict you (or your attorney) from (A) communicating directly with, cooperating with, providing or causing to be provided information lawfully obtained to, or otherwise assisting in an investigation by the Securities and Exchange Commission ("SEC"), FINRA, the Department of Justice, the Equal Employment Opportunity Commission ("EEOC"), the Congress, any agency Inspector General, or any other governmental or regulatory agency, entity, or official(s) or self-regulatory organization (collectively, "Governmental Authorities") regarding a possible violation of any law, rule, or regulation; (B) responding to any inquiry or legal process directed to you individually (and not directed to the Company and/or its subsidiaries) from any such Governmental Authorities, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; (C) testifying, participating or otherwise assisting in an action or proceeding by any such Governmental Authorities relating to a possible violation of law; or (D) making any other disclosures which are permitted under the whistleblower provisions of any applicable law, rule, or regulation. Nor does this Agreement require you to obtain prior authorization from the Company before engaging in any conduct described in this paragraph, or to notify the Company that you have engaged in any such conduct. The Company will not condone any form of retaliation for communicating with a Governmental Authority.

11. Miscellaneous. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

\*
**Candidate eSignature**
\*\*\*\*\*\*

Adam
Ritter

**eSign Date**
05/06/2016, 3:26:59 PM GMT

**IP Address**
107.107.57.187

**Tara N. Amaral**

**SVP, Head of Talent Acquisition**

Updated 03/2016 Fidelity Highly Confidential Information

# Exhibit D

# Employee Agreement

("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. **Confidential Information.** To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization. The foregoing requirements are subject to the limitations set forth in paragraph 10, below.

2. **Systems Access.** In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.



3. **Company Property.** Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. **Outside Business Activities.** So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. **Ethics and Outside Brokerage Accounts.** So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. **Non-solicitation.** In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. **Inventions and Use of Name or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. **Communication with Government Entities.** Nothing in this Agreement shall prohibit or restrict you from (A) communicating directly with, cooperating with, providing or causing to be provided information to, or otherwise assisting in an investigation by the Securities and Exchange Commission, FINRA, the Equal Employment Opportunity Commission, the Department of Justice, or any other government or regulatory agency, entity, or official or self-regulatory organization (collectively, "Government Authority") regarding a possible violation of any law, rule, or regulation; or (B) responding to any inquiry or legal process directed to you individually (and not directed to the Company and/or its subsidiaries) from any such Government Authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances. Nor does this Agreement require you to obtain prior authorization from the Company before engaging in any conduct described in this paragraph, or to notify the Company that you have engaged in any such conduct. However, in connection with any such activity, you acknowledge that you will take reasonable precautions to ensure that confidential information disclosed to any Government Authority is not made generally available to the public, including by informing the recipient of the confidential nature of the same.

11. **Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

Adam Ritter

Digitally signed by Adam Ritter
Date: 2020.05.05 07:46:52 -05'00'

<span style="color:green">**Candidate eSignature**</span>                                                           <span style="color:green">**eSign Date**</span>

Paul H Lesser
Head of Talent Acquisition

# Exhibit E



HR Solutions Operations
PO Box 110365
NM3LA
Durham, NC 27709

12/20/2024

Dear Adam:

I am writing to confirm certain important information associated with your departure from Fidelity, effective 12/19/2024.

**Benefits:** If applicable, under separate cover, you may receive information about how to continue your life, health, disability, and dental insurance coverage. If you have any questions regarding continued coverage, please feel free to contact the Fidelity Benefits Center at (800) 835-5099, Prompt 1. If you are a Retirement Savings Plan participant, Fidelity will also send you information regarding your options with respect to this program. if you have a 401(k) loan, you will receive information under separate cover about options for repayment of your outstanding balance. Please contact the Fidelity Benefits Center with any questions about Profit Sharing Plan participation or 401(k) loans.

**Final Paycheck:** If you have not received your final paycheck, which will include any accrued but unused vacation/elective holiday time remaining as of your separation date, please contact the Fidelity HR Service Center at (800) 835-5099, Prompt 2 with any questions.

**Employment Verification:** Fidelity's policy is to verify dates of employment, job title, employment status and salary information through an employment verification summary and an earnings information summary. To authorize a third party to obtain a standard employment verification summary or an earnings information summary, follow one of these two options; 1) Go directly to The Work® Number at                                    use employer code: 11892 or 2) If you do not have internet access call the Fidelity HR Service Center.

**Delivery of W-2:** If you relocate within the calendar year, please notify the Fidelity HR Service Center to ensure proper delivery of your current year Form W-2.

**Company Property:** We expect that you returned all Company property on your last day of work, including Confidential Information (see below), files, documents, computer and electronic communications equipment, your identification badge, company credit cards, company telephone cards, building or equipment keys, and any other equipment. If you have subscribed to any internet on-line services, such as newsletters or other updates, you are responsible for canceling your subscriptions. If you discover any Company property in your possession in the future, please promptly contact the Fidelity HR Service Center for further instructions.

**Non-Solicitation of Customers and Employees:** Please be reminded that for a period of 1 year following your departure, you may not directly or indirectly hire or solicit any Fidelity employee to leave their employment. For this same period of time, you may not directly or indirectly solicit any customer to cease any business relationship with Fidelity, or do certain types of business with customers with whom you had personal contact during your employment. The specific terms of your obligations with respect to non-solicitation are set forth in the Employee Agreement you signed upon hire and/or during your employment.



HR Solutions Operations
PO Box 110365
NM3LA
Durham, NC 27709

If you need a copy of your full Employee Agreement or have other questions or concerns about the information in this letter, please contact the Fidelity HR Service Center.

We wish you success in your future endeavors.

Sincerely,

Fidelity HR Service Center

**Contacts**

Employee Benefits: 800-835-5099, Prompt 1

HR Service Center: 800-835-5099, Prompt 2

# Exhibit F

**Meredith A. Faro**
Attorney

FMR LLC Legal Department

155 Seaport Blvd., ZW8B
Boston, MA 02210
Phone: 617-392-8136  Fax: (617) 850-8335
meredith.faro@fmr.com

April 18, 2025

**<u>Via Overnight Delivery</u>**

Dear Adam:

It has come to our attention that after you left your position as Vice President, Financial Consultant in Fidelity Brokerage Services LLC's Highland Park, IL Branch, you accepted a position with NewEdge Securities LLC.

Fidelity has reason to believe that you may be contacting Fidelity customers for the purpose of soliciting their business.  The Employee Agreement ("the Agreement") you signed while in Fidelity's employ (copy attached) prohibits such solicitation of Fidelity's customers.  This letter constitutes a formal demand that any such activity cease immediately.  Furthermore, all of Fidelity's customer and prospect lists and all information concerning Fidelity's customers, including names, addresses, telephone numbers, email addresses and account information, are confidential and proprietary.  Pursuant to the Agreement and general principles of law, you are obligated to maintain all of Fidelity's confidential and proprietary information in strictest confidence.  This includes information that you have in your memory.  You may not disclose this information or make any use of it for yourself or for others, including your present or future employers.

Please return to Fidelity any confidential or proprietary information belonging to Fidelity in your possession, such as records, electronic data, computer files, lists, screen prints, or computer discs pertaining to Fidelity clients or individuals or entities you became aware of through your employment at Fidelity, including but not limited to names, phone numbers, addresses and/or email addresses, whether in original, copied, computerized, handwritten or any other form.  To the extent these exist in electronic form, you must not delete it or alter it in any way, but instead must refrain from using it, accessing it or transferring it to anyone, and you must contact us or have your counsel contact us to coordinate its preservation as evidence, and its return to us, in a forensically sound manner.  It is important to understand that deleting or altering such electronically stored information without taking forensically sound steps to preserve it will be viewed as intentional destruction of evidence, and there can be serious sanctions that result from such destruction.  Please verify that you have complied in full as set forth above by signing the enclosed affidavit and returning it to me by **April 25, 2025**.

Also, as a condition of your employment with Fidelity, you were obligated to comply with Fidelity's Compliance Policy for Electronic Communications, Social Media and Systems Usage (the "Social Media Policy").  Pursuant to the Social Media Policy, you were strictly required to disconnect with any Fidelity clients you were connected with on LinkedIn or any other similar networking platforms immediately upon separation from Fidelity.  If you have violated this policy by maintaining connections with any Fidelity clients on LinkedIn or other networking platforms, then Fidelity demands that you delete any such connections and refrain from (a) initiating any

Adam Ritter
Page 2

communications with such client(s) through LinkedIn or any other similar platform's messaging function, and (b) updating your place of employment in a manner that will result in a notification being pushed out to such client(s), or which will be captured by a routine periodic push of updates to such client(s) through regular operation of LinkedIn or other platforms' systems. If you have updated your information since resigning or otherwise engaged in contact or communication with Fidelity clients via LinkedIn or other similar platforms, then you must take steps to preserve evidence prior to any deletion, consistent with the instructions set forth above.

Please be advised that if Fidelity does not hear from you by **April 25, 2025**, the company will pursue all necessary and appropriate remedies that it may have against you, which may include seeking monetary damages, injunctive relief, and/or its attorneys' fees and costs.

I am also sending a copy of this letter to David Schnier, General Counsel for NewEdge Capital Group, LLC, who we assume may want to take steps to ensure that you are not put in a situation that would require or allow you to breach the terms of the Agreement or your other obligations to Fidelity.

Further, you are hereby given notice of your obligation to preserve evidence that you know, or should know, may be relevant to any potential lawsuit regarding the matters set forth in this letter. You should not destroy, conceal, or alter any evidence related to any claims or defenses regarding this matter, including without limitation any evidence in paper or electronic files, or other data generated by and/or stored on any smart phones or computers, including home computers and laptops, or contained in email, text message, or voicemail.

If you have any questions, please let me know.

Very truly yours,

Meredith A. Faro

Enclosures

cc: David Schnier
    NewEdge Capital Group, LLC

## <u>AFFIDAVIT OF ADAM RITTER</u>

Adam Ritter, being first duly sworn, states as follows:

1.     My name is Adam Ritter and I am over the age of 18.  Except where otherwise indicated, the statements contained herein are based on my personal knowledge.  I was employed by Fidelity Brokerage Services LLC ("Fidelity") until my employment ended effective December 19, 2024.

2.     I hereby state that I do not have in my possession, custody or control customer lists (including any Christmas or holiday card or gift mailing lists), records, electronic data, computer files, or documents pertaining to Fidelity clients or prospective clients I worked with or became aware of through my employment at Fidelity, including but not limited to names, phone numbers, addresses and/or e-mail addresses, whether in original, copied, computerized, handwritten, photographed, maintained on an iPhone or iPad or other personal device, or any other form. This includes any documents created either during or after I left my employment with Fidelity that contain information pertaining to Fidelity clients or prospective clients that I worked with or became aware of through my employment at Fidelity, including information recreated through the use of memory, or by using information in memory to recreate information from public sources. To the extent I had any such information in hard copy, I have returned the hard copy documents to Meredith Faro, along with this affidavit. To the extent I had any such information in an electronically stored format, I or my counsel has engaged with Fidelity's counsel to arrange for forensically sound preservation, prior to removal, return to Fidelity and deletion from my possession, of any such electronically stored information.

3.     I have not given any of the above documents or information or copies thereof to any other person or entity.

4.     I have deleted all connections with any Fidelity clients made during my employment at Fidelity on LinkedIn and other networking platforms, and will refrain from (a) initiating any communications with such client(s) through LinkedIn or any other similar platform's messaging function, and (b) updating my place of employment in a manner that will result in a notification being pushed out to such client(s), or which will be captured by a routine periodic push of updates to such client(s) through regular operation of LinkedIn or other platforms' systems.

Pursuant to 28 USC §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 2025        _____
                                                 Adam Ritter


Sworn to and subscribed before me
this _____ day of _____, 2025

_____
Notary Public

# Employee Agreement

("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. **Confidential Information.** To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization. The foregoing requirements are subject to the limitations set forth in paragraph 10, below.

2. **Systems Access.** In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.



3. **Company Property.** Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. **Outside Business Activities.** So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. **Ethics and Outside Brokerage Accounts.** So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. **Non-solicitation.** In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. **Inventions and Use of Name or Likeness.** Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. **Agreements with Others.** Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. **At Will Employment.** Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

**10. Communication with Government Entities.** Nothing in this Agreement shall prohibit or restrict you from (A) communicating directly with, cooperating with, providing or causing to be provided information to, or otherwise assisting in an investigation by the Securities and Exchange Commission, FINRA, the Equal Employment Opportunity Commission, the Department of Justice, or any other government or regulatory agency, entity, or official or self-regulatory organization (collectively, "Government Authority") regarding a possible violation of any law, rule, or regulation; or (B) responding to any inquiry or legal process directed to you individually (and not directed to the Company and/or its subsidiaries) from any such Government Authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances. Nor does this Agreement require you to obtain prior authorization from the Company before engaging in any conduct described in this paragraph, or to notify the Company that you have engaged in any such conduct. However, in connection with any such activity, you acknowledge that you will take reasonable precautions to ensure that confidential information disclosed to any Government Authority is not made generally available to the public, including by informing the recipient of the confidential nature of the same.

**11. Miscellaneous.** This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

Adam Ritter

Digitally signed by Adam Ritter
Date: 2020.05.05 07:46:52 -05'00'

**Candidate eSignature**                    **eSign Date**

Paul H Lesser
Head of Talent Acquisition

# Exhibit G

**From:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Sent:** Friday, April 25, 2025 5:25 PM
**To:** Faro, Meredith <Meredith.Faro@fmr.com>
**Subject:** [External] FW: Letter to Adam Ritter dated April 18, 2025

**NOTICE: This email is from an external sender - do not click on links or attachments unless you recognize the sender and know the content is safe.**

Meredith,

I sent the below this morning, but had a typo in your email address.

John

**John S. Monical, Managing Partner  |  jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606  |  P: 312.924.4262  |  F: 312.372.2389  |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** John S. Monical
**Sent:** Friday, April 25, 2025 10:02 AM
**To:** medith.faro@fmr.com
**Cc:** Jacqui Jones <jjones@lawrencekaminlaw.com>
**Subject:** Letter to Adam Ritter dated April 18, 2025

Meredith,

I left you a voicemail this morning to discuss the letter you sent to Adam Ritter ("Adam") dated April 18, 2025 (the "Letter").  As stated in the voicemail, Adam has engaged Lawrence Kamin to help him resolve the issues raised by the Letter.

Adam submits that he has not violated his obligations to Fidelity.  The Letter attaches and requests that Adam execute an affidavit.  I have concerns with the affidavit, which include:

- The Letter refers to a Social Media Policy, which is not enclosed with the Letter itself. The Letter's description of the Social Media Policy differs from Adam's recollection. Also, we understand that the Social Media Policy was recently amended.  Please send us a copy of the Social Media Policy in effect on Adam's termination date (December 19, 2024), with the revision date reflected so that we can provide an accurate response.
- The proposed affidavit does not track the language of the contract and appears calculated to expand Adam's obligations to Fidelity.

If you can get the Social Media Policy to me today, we can talk early next week about how to resolve any concerns.  I have copied my assistant Jacqui, who will provide my availability.

I look forward to working with you on this matter.

John



**John S. Monical, Managing Partner**  |  **jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606  |  P: 312.924.4262  |  F: 312.372.2389  |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit H

| | |
|---|---|
| **From:** | Faro, Meredith |
| **To:** | John S. Monical |
| **Cc:** | jjones@lawrencekaminlaw.com |
| **Subject:** | RE: [External] FW: Letter to Adam Ritter dated April 18, 2025 |
| **Attachments:** | image001.jpg |
| | PI-Scope for electronic communications,...pdf |
| | Affidavit of Adam Ritter.docx |

---

Hi John –

I'm sorry I missed your call. Attached is the social media policy specific to Fidelity Brokerage Services employees, which was referenced in my letter. This version has been in effect since July 2023. Also attached is a Word version of the affidavit if you would like to make any changes.

I am available today between 11AM and 2PM or after 4PM if you would like to discuss further. I am also available tomorrow after 2PM.

Thanks,

Meredith


Meredith Faro

FMR LLC Legal Department

155 Seaport Blvd., ZW8B

Boston, MA 02210-2698

617-392-8136

617-850-8335 (FAX)

meredith.faro@fmr.com


This e-mail, and any attachments hereto, are intended for use by the addressee(s) only and may contain information that is (i) protected by the attorney-client privilege, (ii) attorney work product, (iii) confidential or highly confidential information of FMR LLC and/or its affiliates and/or subsidiaries, and/or (iv) proprietary information of FMR LLC and/or its affiliates and/or subsidiaries.  If you are not the intended recipient of this e-mail, or if you have otherwise received this e-mail in error, please immediately notify me by telephone (you may call collect 617-392-8136), or by e-mail, and please permanently delete the original, any print outs and any copies of the foregoing. Any dissemination, distribution or copying of this e-mail is strictly prohibited.

---

**From:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Sent:** Friday, April 25, 2025 5:25 PM
**To:** Faro, Meredith <Meredith.Faro@fmr.com>
**Subject:** [External] FW: Letter to Adam Ritter dated April 18, 2025

**NOTICE:** This email is from an external sender - **do not click on links or attachments unless you recognize the sender and know the content is safe.**

Meredith,

I sent the below this morning, but had a typo in your email address.

John

**John S. Monical, Managing Partner**  |  **jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606  |  P: 312.924.4262  |  F: 312.372.2389  |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** John S. Monical
**Sent:** Friday, April 25, 2025 10:02 AM
**To:** medith.faro@fmr.com
**Cc:** Jacqui Jones <jjones@lawrencekaminlaw.com>
**Subject:** Letter to Adam Ritter dated April 18, 2025

Meredith,

I left you a voicemail this morning to discuss the letter you sent to Adam Ritter ("Adam") dated April 18, 2025 (the "Letter").  As stated in the voicemail, Adam has engaged Lawrence Kamin to help him resolve the issues raised by the Letter.

Adam submits that he has not violated his obligations to Fidelity.  The Letter attaches and requests that Adam execute an affidavit.  I have concerns with the affidavit, which include:

- The Letter refers to a Social Media Policy, which is not enclosed with the Letter itself. The Letter's description of the Social Media Policy differs from Adam's recollection. Also, we understand that the Social Media Policy was recently amended.  Please send us a copy of the Social Media Policy in effect on Adam's termination date (December 19, 2024), with the revision date reflected so that we can provide an accurate response.
- The proposed affidavit does not track the language of the contract and appears calculated to expand Adam's obligations to Fidelity.

If you can get the Social Media Policy to me today, we can talk early next week about how to

resolve any concerns.  I have copied my assistant Jacqui, who will provide my availability.

I look forward to working with you on this matter.

John



**John S. Monical, Managing Partner** | **jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606  |  P: 312.924.4262  |  F: 312.372.2389 |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This
message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the
intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this
document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit I

## AFFIDAVIT OF ADAM RITTER

Adam Ritter states as follows:

1.  My name is Adam Ritter and I am over the age of 18. Except where otherwise indicated, the statements contained herein are based on my personal knowledge. I was employed by Fidelity Brokerage Services LLC ("Fidelity") until my employment ended effective December 19, 2024.

2.  Upon information and belief, I do not have any confidential information from Fidelity, including any of the following:

> trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal"

3.  To the best of my knowledge and belief, during my employment with Fidelity: (i) I connected to five Fidelity clients on LinkedIn; and (ii) I did not connect with any Fidelity client on any other social media platform. I was unaware that Fidelity's Social Medial Policy contained language expecting me to "disconnect from any Fidelity clients that they are connected with on professional networking sites, such as LinkedIn, upon the termination of the associate's employment with Fidelity." After becoming aware of this language, I disconnected from all five connections on LinkedIn.

I state under penalty of perjury that the foregoing is true and correct. 28 U.S. Code § 1746

Executed on _May 2_____, 2025

_____
Adam Ritter

# Exhibit J

**From:** Guerette, Susan
**Sent:** Wednesday, May 28, 2025 8:05 PM
**To:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Subject:** RE: Adam Ritter

John, I have not heard back from you following our discussion so I prepared the attached Declaration.  Let me know if Mr. Ritter is willing to sign this to avoid the need for Fidelity to seek injunctive relief.

Regards,
Susan

**Susan Guerette**
Partner

Fisher & Phillips LLP
Two Logan Square | 12th Floor | 100 N. 18th St. | Philadelphia, PA 19103
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website | *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Sent:** Tuesday, May 20, 2025 2:39 PM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** RE: Adam Ritter

**CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

Affidavit is Attached.

John

**John S. Monical, Managing Partner | jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606 | P: 312.924.4262 | F: 312.372.2389 |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Tuesday, May 20, 2025 9:05 AM
**To:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Subject:** RE: Adam Ritter

Hi John, I will try you at 1:30 Central. I will call you on your work number below unless there is a better way to reach you.

Regards,
Susan

**Susan Guerette**
Partner

Fisher & Phillips LLP
Two Logan Square | 12th Floor | 100 N. 18th St. | Philadelphia, PA 19103
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Sent:** Tuesday, May 20, 2025 9:58 AM
**To:** Guerette, Susan <sguerette@fisherphillips.com>
**Subject:** RE: Adam Ritter

**CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

Susan,

I am available to talk today at the following times:

     11:00am Central
     1:30pm Central
     3:30pm Central

John

**John S. Monical, Managing Partner**  |  **jmonical@lawrencekaminlaw.com**
300 S. Wacker Dr., Suite 500, Chicago, IL 60606  |  P: 312.924.4262  |  F: 312.372.2389  |
**www.LawrenceKaminLaw.com**

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Guerette, Susan <sguerette@fisherphillips.com>
**Sent:** Monday, May 19, 2025 8:52 AM
**To:** John S. Monical <jmonical@lawrencekaminlaw.com>
**Subject:** Adam Ritter

John,

I represent Fidelity and I know we have been exchanging messages over the last few days.  Please let me know a time today or tomorrow when you would be available to talk and I will call you then.  If

we are not able to resolve the issues, Fidelity has instructed me to proceed with a motion for injunctive relief, so I would like to speak with you to determine if that will be necessary.

Regards,
Susan

**Susan Guerette**
Partner

Fisher & Phillips LLP
Two Logan Square | 12th Floor | 100 N. 18th St. | Philadelphia, PA 19103
sguerette@fisherphillips.com | O: (610) 230-2133 | F: (610) 230-2151

vCard | Bio | Website    *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

# Exhibit K

# SUPPLEMENTAL AFFIDAVIT OF ADAM RITTER

Adam Ritter states as follows:

1.      My name is Adam Ritter and I am over the age of 18.  Except where otherwise indicated, the statements contained herein are based on my personal knowledge.  I was employed by Fidelity Brokerage Services LLC ("Fidelity") until my employment ended effective December 19, 2024.

2.      My contract with Fidelity contains the following language:

> During this same period [one year], Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies.

3.      After my departure from Fidelity, I had contact with customers and announced my departure from Fidelity. Fidelity has raised concerns and reported that clients may have interpreted these communications as solicitation and inducements to them to transfer their accounts. My communications were made in good faith. I do not believe that I convinced any client to transfer their accounts by soliciting or inducing them.

4.      To avoid misunderstanding and address Fidelity's concerns, until December 19, 2025, I will not initiate any contact with customers except to send them personal greetings or to comment on personal interests (such as to remark on a sporting event or to wish "Happy Thanksgiving"). If a customer contacts me or I have a request to contact them to discuss their accounts or financial services, I will respond to those requests.

I state under penalty of perjury that the foregoing is true and correct. 28 U.S. Code § 1746

Executed on ___June 6___, 2025

_____
Adam Ritter